We're ready to take our fourth case of the day, Hafen v. Howell, 23-4116, Mr. Bowley. May it please the court, Matthew Bowley appearing on behalf of Gretchen Howell and Leslie Howell, who respectively are appealing the two separate judgments that were entered against them. Now this appeal involves not a single error, but a series of errors. More errors than I have time to address in the 15 minutes allotted to me. Frankly, more errors than we really had word-limit ability to address, to the extent I would have liked to in the brief. When the Howells were sued several years ago, they were concerned that they may not get a fair trial, because the plaintiff in the action against them was appointed by the very judge that they would have to appear in front of to defend themselves. But they took solace in the thought that the rules of civil procedure and the rules of evidence would be applied appropriately and even-handedly. In its rush to grant judgment in favor of the receiver in this case, the lower court trampled those rights. The summary judgment ruling draws every reasonable inference and beyond in favor of the receiver and against the Howells. The court relied on testimony that is not admissible in evidence to find the existence of a Ponzi scheme, specifically relying on testimony from witnesses that had no personal knowledge, and therefore, because they lacked personal knowledge, were not competent to testify to the matters. Hadn't they been through the records? They had read documents. Sounds like personal knowledge. Let me address that, Your Honor. First of all, Mr. Hafen had not read the documents. He hired lawyers and accountants to review documents, and then they reported back to him their findings, and then he regurgitated those summarized findings in his report. But I suppose the question the court should ask is, what is personal knowledge? Is personal knowledge gained by reading a document? Is personal knowledge gained by listening to or reading a witness statement? Doesn't personal knowledge require the person to see with their own eyes, hear with their own ears, and perceive with their own perceptions the events? So what is the universe of people who meet those qualifications in this case? With respect to the funds they put into Russ Rarecoin and the funds that they received back, the Howells, with respect to the goings-on at Russ Rarecoin, dozens of people, including Mr. Rust, his family members, and all those that were involved in the business enterprises of Russ Rarecoin. Any of those persons could have been called as a witness, Your Honor. Those same persons could have been called to authenticate a document. Those are unfriendly witnesses, though, right? I don't know if they were, would or would not be unfriendly. The universe can't be people who we like to testify. I think the universe is the people that have personal knowledge, whether they're friendly or unfriendly. Sometimes you're, as a plaintiff, you're put in a position, or a defendant if you have an affirmative defense, of proving your case through the evidence of other persons, perhaps unfriendly witnesses. But it's only those persons who saw the event, heard the event, experienced the experience, can speak. Now, the documents could come into evidence. But the summary judgment ruling in this case was not premised on documents, or the court's interpretation of those documents either as a matter of law or a review of those documents drawing all reasonable inferences in favor of the House. It was the contrary. Now, this is illustrated, the lack of personal knowledge, Your Honors, is illustrated by the testimony that was given by Mr. Hayden in his deposition that's called out in the opening brief. It's also called out by the testimony given by Mr. Schaum during his deposition. Mr. Schaum was not deposed because the House didn't have the benefit of a report or statement in advance of the close of back discovery. What was your objection at the proceeding to this use of the expert reports? The objection was made in two ways, Your Honors. Both, an objection was raised as to all three of these witnesses and the information contained in the reports in the summary judgment opposition itself, which Rule 56 requires. What was the objection? What did you say was wrong? Did you say this was hearsay, that we needed to have access to the documents before the summary of the documents can be admitted? What sort of objection, not whether there was an objection made, but what was the gist of any objections that were made? The gist of the objections were that it was hearsay upon hearsay upon hearsay with respect to Mr. Hayden. And what was the response to that? The response that the trial court made was that he was an expert and that his testimony was helpful to the court, not that it was a summary. And I don't know how Mr. Hayden is qualified to provide a summary where he didn't personally review documents or even the witness statements. In this case, his report regurgitated unsworn witness statements by persons that were interviewed by the FBI, by his legal team and others that he didn't even participate in and that he didn't even read or listen to, but that were just described to him after the fact by his lawyers in a summary form. And he regurgitated this. So the judge treated Hayden himself as the expert? One of the two experts. The lower court treated both Mr. Hayden and Mr. Strong as experts. An objection was also raised as to Mr. Hayden that he didn't qualify as an expert. Now, I know Mr. Hayden, and he is a very competent and accomplished trial attorney, and he could qualify as an expert, for instance, on the standard of care that an attorney should provide to his client before and after trial. What he is not is an expert in Ponzi schemes. I don't know that such a thing exists. That's the ultimate issue that the trial fact must decide. In contrast, Mr. Strong also qualified as an expert with respect to forensic accounting, and he was qualified to give opinions like insolvency, tracing of funds, but that is not what his report covers either. His report is substantially identical to Mr. Hayden's, and it simply summarizes facts of which Mr. Strong, neither Mr. Strong nor Mr. Hayden have personal knowledge and regurgitates them. That was not offered as a summary. Those reports were offered as expert testimony, and that is the context in which the court received them. But it was clear that the court was referring to Hayden as an expert. I believe so, Your Honor. This wasn't like a pleading seeking summary judgment and a summary of the evidence supporting summary judgment in his favor. No, it was an expert report, Your Honor, and the court accepted it. If the court goes back and reads the ruling and looks at the citations that the lower court makes in support of its summary judgment ruling with respect to the existence of the Ponzi scheme, you'll see that it's almost exclusively citations to Mr. Hayden's report. I'm running short on time. I want to make sure I address your questions, but I do want to address at least two things in the argument today. First of all, Mrs. Howell is in a very different position than Mr. Howell. The evidence was very clear. The record is absolutely clear that Gretchen Howell was a loser. She put approximately $92,000 into Russ Rare Coins. She received back $22,000. So she lost $70,000. She was not a winner. I thought she was being held liable because the money owed by her husband or the excess received by her husband could be traced to properties she has an interest in. So if he used $3 million of excess funds from the, I'll say, alleged Ponzi scheme at this point, then all that property and what was done with that money, which was build the home and buy the land, would be, could be clawed back. And if she was a recipient of that, because he gave her half interest, it could be clawed back from her, not as an investor at all, but as a recipient of the funds that should be clawed back. The rationale the court gave in both its original summary judgment ruling and at the time it issued its decision on cross-motion under Rule 59 was just what the court has articulated, which the lower court conceded that Gretchen Howell did not receive any direct transfers in excess of her contributions to Westford Coin. Then the court looked at all of the transfers to less than the aggregate without distinguishing on a transfer-by-transfer basis which ones are voidable under the Utah Voidable Transactions Act, which is critical. And then without any tracing, assumed because Gretchen was half owner of the house, that she received half the benefit of any funds put into the house. And what's wrong with that reason? Several things. First of all, there's no admissible evidence of the exact amount that was put into the house. And the court has this in the record before you, but during his deposition, Mr. Howell was asked how much money he spent, how much money he paid to contractors, and he said he didn't know and couldn't answer because he would be required to speculate. Did he say at least something? After several objections, he was clearly speculating, and the questions went threshold by threshold. The last one was more than $3 million, and he said, I believe so, which is equivocal. And it was clear from his prior testimony that he was speculating. That's only the first part. I thought he said between three and four. The question was between three and four, or more than three, less than four, and he said, I believe so. And the court went with the low amount. Yes, but I believe that testimony is inadmissible because he was speculating, but that's only the first problem. There are multiple other problems. It requires drawing inferences against Gretchen to assume that a dollar spent by Mr. Howell on his home enriched Gretchen dollar for dollar. It also ignores timing. Is that because the amount spent on the home is not necessarily the value of the home? Correct, Your Honor. That's what you're getting at there? In other words, if you buy the nice or you built the nicest house in the neighborhood, it may not sell for what you sold, what you paid. Exactly, Your Honors. I've personally seen a home built for $17 million, foreclosed on for $6 million, and foreclosed on a second time at under $4 million. So do you want a remand for an actual valuation at that time? I believe that that, at a minimum, is required because the money judgment that's provided for under the Utah Avoidable Transactions Act must be based on the value of the asset transferred. Now… At the time of transfer. At the time of transfer. That's another point where we run into a critical problem, which is timing. Under the Utah Avoidable Transactions Act, each transfer must be looked at on its own merits. The Utah Act does not look at a series of transactions. It focuses on each one, and it's very clear under the act that if regionally equivalent value is given in good faith for a transfer, that transfer is not avoidable. And the record in this case was clear that at least at the time the property was purchased and titled in Gretchen Howell's name, the funds that Les had received from Russ for a coin were less than the funds that he put in. So the cash transfer to him that allowed him to buy the home and his subsequent titling of the property in Gretchen's name is not avoidable. We don't… On the record before us, we don't know when that line was crossed vis-à-vis the payment to contractors, how many of those payments to contractors and any amount came before or after that line was crossed. I'm nearing the end of my time, so I wanted just to make one point that I plan to make about the Ponzi presumption. There are several cases that the 10th Circuit has previously issued which acknowledge the Ponzi presumption. None of them are under Utah law or the Utah Avoidable Transactions Act. The Ponzi presumption is federal common law that is applied to state statutes. In short, it is an Erie guess under Erie Railroad versus Tompkins. There is no Utah law that supports it. Its origins derive originally from federal bankruptcy cases, so then it was a federal common law doctrine applied to federal statutes. But as a federal common law doctrine applied to state statutes, it's improper and this court's not bound by the prior precedent because of a significant change. The Utah Avoidable Transactions Act, which applies here and which was not applied in any of those prior cases, clearly specifies the burden of proof to prove actual intent to hinder delay into fraud is on the plaintiff or the creditor. Can I just jump in there? Can you point out where you made that argument below? It was made in the briefs, Your Honor, and I'll concede this. I didn't say to the lower court, you shouldn't apply the Ponzi presumption. I have found in my short years as an attorney that judges don't like when you tell them they're wrong and you need to find another way to persuade them that perhaps what they've done in the past is incorrect. This lower court had issued written decisions adopting the Ponzi presumption and it was clear to me if that was the argument I made, she would have closed her ears and turned her mind off to the question. So instead, I focused on the burden of proof under the statute and we've called out in our briefs multiple places, both in the written briefs and during oral argument, in which I urged the lower court to apply the proper burden of proof and to put on the receiver the burden of proof in each transfer was avoidable based on actual intent to hinder delay into fraud. Thank you. Thank you, counsel. Exceeded my time. Thank you. Good morning, Your Honors. Jeff Balz on behalf of Jonathan O. Hafen. We're here before the court on a clawback action in which Mr. Hafen sought the recovery of funds. As Judge I pointed out, the first issue they raised on the Ponzi presumption is not preserved below. In fact, throughout the briefing, it was assumed that once Mr. Hafen, the receiver, proved the existence of a Ponzi scheme, that all transactions would therefore be presumptively fraudulent. And that's in fact what the defendants argued here. They said that the receiver failed to carry his burden of proof in proving the existence of a Ponzi scheme. But once that burden had been met, then all transactions, all transfers would then be considered fraudulent. And that's supported not only by this court's case law in Dockstader, Cornelius, Miller, and Georgulis, but also by the plain language of the Utah Voidable Transactions Act. Counsel, can I just stop you there, though? Is posting counsel correct that we have not recognized the presumption under Utah law? You have recognized the presumption under Utah law. In fact, Georgulis, the court said under the UFTA, once it's established the debtor acted as a Ponzi scheme, then all presumptions are proved fraudulent. So this court held it was under the Utah Fraudulent Transactions Act that the Ponzi presumption applied. So you disagree that we're in predictive territory here? Yes, we're under here case law. We're here under the Uniform Voidable Transactions Act, Utah's transaction, which this court's already held the Ponzi presumption applies. In fact, I'm not aware of, and I guess this says a lot about Utah, I'm not aware of another Tenth Circuit case from another state other than Utah. Dockstader, Cornelius, Miller, and Georgulis, which this court's applied the Ponzi presumption, all applied under the Utah Uniform either Voidable Transfers Act or Voidable Transactions Act. Does it matter which? Because the published opinion came with the statute that's now no longer in effect. It doesn't. The language there is similar. The only thing that I'm aware of a difference between the two statutes is sort of the burden of proof for voiding. So now it's about prior preponderance of the evidence instead of clear and convincing evidence. And so now I think even more presumptively, given the burden shift, I think it's even easier under the new statute. Easier, but first impression. Under the germane language, I don't think it is first impression because I think other than that one issue, the language of the statutes are the same. Are these statutes Uniform Acts? They are, Your Honor. Do you have any cases from other jurisdictions? I do not, Your Honor. Well, actually there are. The Scholes v. Lehman case, I believe out of the Fifth Circuit, applies the Ponzi presumption. And that was under a state statute that was a Uniform Act? That's correct, Your Honor. Because I think this is universal with Uniform Acts, that they have a provision saying you should try to interpret it the way other states do. Is that true of this statute? I'm not sure on that issue, Your Honor. I'd be surprised if it's not. But if so, that would give us additional guidance depending on what the other states say. It does, Your Honor. So all federal circuits that I'm aware of have applied the Ponzi presumption. Scholes v. Lehman, there's a number of other cases that apply the Ponzi presumption. Are they all cited in your brief? They are, Your Honor. What do we do with Galen Russ's guilty plea statement, admitting a Ponzi scheme, as I understand it? So I think it is relevant, Your Honor. The court below said that she didn't rely upon it. She noted it. She said that it was consistent with the other expert testimony relating to the Ponzi scheme. But she said she didn't rely upon it. If she did rely upon it, she was still entitled to rely upon it, and it would have been proper for her to do so, but she said that she didn't. But his admissions confirmed the fact that this was a Ponzi scheme, that he was defrauding investors out of millions of dollars. That he was using other investor funds to pay prior investors. So that's what I think we should do with that statement. Probably what the court below did, which is note that it's consistent with the other testimony, but she ultimately decided not to rely upon it. Should it bear on the admissibility of the other testimony? I don't think it does, Your Honor. I think those are separate issues. And it's kind of worthless, doesn't it? Yeah. Going on to the admissibility of the other testimony, she relied upon Mr. Shaw, who was not an expert, just a fact witness based upon his review of the documents. And then she relied both upon Mr. Haytham and Mr. Strong's testimony that this was a Ponzi scheme. The court actually found that Mr. Haytham was an expert, as relates to Ponzi schemes. Mr. Strong and Mr. Haytham reviewed numerous records. Mr. Strong did an analysis regarding insolvency. He had sufficient knowledge and sufficient basis upon which to make that testimony. And the defense in this case has not shown that that determination by the court of admissibility was an abuse of discretion, which is an appropriate standard in this case. Well, how was it admissible? Just because an expert can rely on anything that experts rely on? Or did she say that these were records that were admissible as business records, et cetera? Yeah, so these would be admissible as business records. Was that offered, and did the judge rule on that? I believe that the court did, and it was ruled upon. She found that they were... She applied the principles to the facts. She found that he relied upon the appropriate evidence. There was no objection to the documents upon which they relied upon. There was no argument that the documents of Rushware Coin were inadmissible or hearsay evidence. That was not made below. I understood opposing counsel to say that it was hearsay, that there was an objection to this as hearsay. I don't believe that that objection was made below as far as the records that Mr. Strong reviewed in determining insolvency. I don't think that that hearsay argument was made below. I gather that Mr. Haven also reported on interviews of people. He did, Your Honor. That's got to be hearsay. Well, it was an interview of Galen Rust himself. That was the only interview that he relied on? I believe that's the only interview that he relied upon were interviews of Galen Rust, the perpetrator of the Ponzi scheme, Your Honor. And why is that okay? That's a statement against interest that I think is admissible. We also have the subsequent then... Did the judge make a determination that it was a statement against? It's got to be penal interest, doesn't it? It does, Your Honor. And we did make arguments below that his statement and in particular the guilty plea were admissible under Rule 803 and 807. But when the judge said she didn't rely on Rust's statement, did that include, do you think that encompassed the statement that Mr. Haven used? I think that was only... I think that was specifically to the guilty plea, Your Honor, and not the prior statement. One thing that the counsel raised in arguments, he says that he doesn't know the exact time where the line was crossed between giving reasonably equivalent value. That burden... And he asked the court to remand for that determination. That burden, Your Honors, is upon the defendants under Utah Code 25-6-304, that once it's determined that a transfer is made with the intent to hinder, delay, or defraud, the burden then shifts to the defendants to show both that they gave reasonably equivalent value and that they took in good faith. And so where that line was crossed was the burden that the defendants have, in this case, Your Honor, or Your Honors. Moving now... So if I'm understanding you, you don't dispute that a timing issue could be relevant, but you're saying it was the Howell's burden, Mrs. Howell's burden, to show that at the time the money was put into the home, he was still owed money. He had not profited from the scheme yet. Is that your position? So my position is it is their burden. My second position is that the facts of this case, while the property may have been purchased with funds, or at least that's their argument, is the property was purchased with funds for which reasonably equivalent value was given. I think it's undisputed, however, that the $3 million to $4 million that was used to build the home and construct the improvements on the property, that was made with net winnings. That was made with funds for which reasonably equivalent value had not been given by the Howells. And let's testify that he spent more than $3 million to purchase the home and that he only used funds from the Ponzi scheme to construct the home. Should we expect better, though, than a reluctant, equivocal, seventh time around, however many questions, maybe $3 or $4 million? Couldn't that be established? It could be established, Your Honor. And the party that had the evidence to establish it would be the defendants. Les knows how much... Nathan could have gotten an appraiser. Well, I think the question was how much was spent on the home, how much of the Ponzi scheme funds were used to build the home, which Les said he spent more than $3 million but less than $4. That evidence is in the, I think, sole custody and control of the Howells. How much he spent. How much he spent. Is the value of the home irrelevant? I think it largely is, Your Honor, because what we're talking about here is we're talking of the transfer to Les Howell, which he then used to build the home. And so the fraudulent transfer here isn't the value of the home, it's in excess of $3 million that Les received in excess of his contributions. So if he used $3 million to build the home and the home would only have a fair market value of $1.5 million, could she still be unhooked for $3 million? She would be unhooked for half of what he spent, the $1.5 million. Even though that's twice as much as her share of her interest in the home? First of all, this is something that we don't need to get into, but Arizona's a community property state. I think she gets the full value that was spent under that. Second, yes, because what we're talking about here is the transfers that are avoidable here. It's the transfers to Les Howell of that $3 million which he then used for her benefit. That's one of the transfers to Les, but the other one is to Gretchen. And that wasn't at the same time. And so why don't you have to, by the words of the statute, why don't you have to establish what the value was at the time of the transfer to Gretchen? Because the value of it is the money that he spent on her behalf. But what if they had a housing crash? And by the time that he transferred it to Gretchen, the house was only worth $1 million. Yeah. I think the saying is, and I want to just sort of flip the hypothetical, that if Gailen Russ would have paid the contractors directly, if she would have paid $3 million to the contractors directly, Les and Gretchen would still be on hook for that full $3 million, even if they didn't receive the full benefit of it. Because that was what was paid on their behalf. That was the transfers that the statute talks about, both an immediate transfer, and then also on somebody, on whose behalf the transfer was made. But you're treating it like Les and Gretchen received a transfer on the same date, and they didn't. Les transferred to Gretchen later. And so my question again is, what if by the time Les transferred it to Gretchen, there'd been a housing crash, and it was only worth $1 million? Do you still say that you could get $1.5 million against her? Yes, Your Honor. How can that be? Because it's what was transferred on her behalf. It was the money that was transferred for her benefit, the more than $3 million. Well, what's transferred? It's not a transferring of a house. It's not a transferring of a half interest in a property. It is the transferring of the value of the money that was then used to build the home. And so that's what a transfer is. It's not that he said, hey, I built this home, I'm now going to transfer half a million dollars, half of this interest to you. It's, I'm transferring $3 million on your behalf to construct the home. What if he put it all in the bank, and he spent $2 million of it, and then he transferred the balance? She'd only be responsible for the half million, right? Of what was... of what was the remaining $1 million in the account before he spent the rest. But that's not a fax. It's pretty close. I mean, if a house goes down in value to $1 million, by the time Gretchen gets any share of it, I don't see how you can say her value is $1.5 million. She had the interest in the home when the money was spent for the improvements on the home. What's the timing? Was the transfer to Gretchen how many weeks, days, months after the home was completed? It was before the home was completed, Your Honor, that the property had been titled in her name as community property. And so when the money was spent by Les, that's when the transfer occurred, is when he spent the money. So she already had the half interest. She already had the half interest when he built the home. But we still don't know what the value was. And you'll agree that you can build a home for more than what you're going to be able to sell it for? Agreed. So why does it have to not go back and somebody say, you're right, it's not worth $3 million. In fact, it's worth $5 million. Because what was transferred to her was the $3 million to build that home. Okay. Thank you, Your Honor. Thank you. Did we go over it? Yes. Okay. So I haven't thought about the values. Do you want clarification? Do you maybe want 30 seconds? More than I need. I just want to clarify this. In the prior precedence from the 10th Circuit, the Circuit Court of Appeals has applied the Ponzi presumption to the Utah Uniform Fraudulent Transfer Act, that's a prior statute. We have an unpublished, though, that applies to Uniform Voidable Transfer Act, right? You have an unpublished? I wasn't aware of that. I'll be proved wrong. That's my understanding. I'm probably wrong. Your clerks are probably sharper on my side than me. That's the only point I wanted to make, Your Honor. Thank you. I just wanted to clarify. Thank you. Thank you, counsel. Case is submitted. Counselor excused.